# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| KIMBERLY DEARTH, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of the )<br>Social Security Administration, )<br>      Defendant. ) | CAUSE NO.: 2:16-CV-487-JEM |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on June 3, 2016, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16], filed on November 14, 2016. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On January 18, 2017, the Commissioner filed a response, and on February 7, 2017, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.    Procedural Background**

On February 26, 2013, Plaintiff filed an application for benefits alleging that she became disabled on August 3, 2012. Plaintiff's application was denied initially and upon reconsideration. On February 11, 2015, Administrative Law Judge ("ALJ") Christopher Helms held a hearing at which Plaintiff, with an attorney representative, a vocational expert ("VE"), and two of Plaintiff's family members testified. On February 26, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

      The ALJ made the following findings under the required five-step analysis:
      1.    The claimant has not engaged in substantial gainful activity since her alleged

onset date of August 3, 2012.

2. The claimant has the following severe impairments: seizures; degenerative disk disease of the cervical and lumbar spine; migraines; fibromyalgia; anxiety; and depression.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity to perform sedentary work, sitting for six hours and standing or walking for two hours in an eight-hour workday and occasionally lifting or carrying up to ten pounds, with the following limitations: she cannot climb ladders, ropes, or scaffolds; she is limited to simple, routine, repetitive tasks and occasional contact with the public; and she must avoid exposure to moving mechanical parts and unprotected heights.

5. The claimant is unable to perform any past relevant work.

6. The claimant was 32 years old, which is defined as a younger individual age 18-44, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability since her alleged onset date of August 3, 2012.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42

U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.

1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III. Analysis

Plaintiff argues that the ALJ erred in his RFC assessment because (1) he failed to assess the frequency of Plaintiff's seizures and migraines and did not explain how he considered those impairments in assessing her RFC; and (2) he did not incorporate her moderate limitations in concentration, persistence, or pace into the RFC or into his hypothetical questions to the VE at the hearing. The Commissioner argues that the RFC assessment is supported by substantial evidence and sufficiently accounts for Plaintiff's limitations.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into

4

consideration all of the relevant evidence, both medical and non-medical. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing S.S.R. 96-8p; *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

"Both the RFC and the hypothetical [to the VE] must account for all of the plaintiff's medically determinable impairments." *Kasberger v. Astrue*, No. 06-3868, 2007 WL 1849450, at *3 (7th Cir. June 27, 2007) (citing 20 C.F.R. § 404.1545(a); *Young*, 362 F. 3d at 1002-03). The ALJ found that Plaintiff had several severe impairments, including seizures and migraines. A medically-determinable impairment is considered "severe" if it "significantly limits an individual's physical or mental abilities to do basic work activities." SSR 96-3p, 1996 WL 374181 at *1. Despite the finding that migraines and seizures were severe impairments, the ALJ failed to explain how either was incorporated into the RFC. In explaining his RFC assessment, the ALJ summarized the medical evidence and testimony related to migraines and seizures. The ALJ then noted that he found the testimony "partly credible," without indicating which statements he credit or discredited, or explaining what limits her migraines and seizures caused to Plaintiff's workplace abilities.

In addition, the ALJ failed to properly consider Plaintiff's mental impairments. The ALJ concluded at step two of his analysis that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. However, he did not sufficiently address these difficulties in his RFC or in the hypothetical questions he posed to the VE. "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). "Among the mental limitations

5

that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *see also Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (explaining that the hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'").

The ALJ incorporated only two mental limitations into Plaintiff's RFC: no more than occasional contact with the public, and a limitation to "simple, routine, repetitive tasks." The Seventh Circuit has "repeatedly rejected the notion that ... 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" *Varga*, 794 F,3d at 814-15 (quoting *Yurt*, 758 F.3d at 858-59); see also *O'Conner-Spinner*, 627 F.3d at 614 ("[E]mploying terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace.").

An ALJ's hypothetical may omit the exact terms "concentration, persistence, or pace" when it is apparent that the ALJ's phrasing precludes tasks that someone with the claimant's limitations could not perform. *See Arnold v. Barnhart,* 473 F.3d 816, 820, 823 (7th Cir. 2007) (holding that a limitation to simple, low-stress work with low production standards was sufficient to account for the mild-to-moderate difficulties in concentration, persistence, or pace caused by claimant's problems handling stress). In this case, the agency psychologists who reviewed Plaintiff's file determined that she was "moderately limited" in several abilities relating to concentration, persistence, or pace, including the ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. A limitation to "simple, routine, repetitive tasks" is insufficient

to capture those limitations, because tasks that are "simple" and "routine" may still outstrip the abilities of a person with limitations in concentrating on or pacing tasks, particularly if those tasks must be performed on a sustained basis at an acceptable rate of production over the course of a work day. *See Stewart v. Astrue,* 561 F.3d at 684-685; *Warren v. Colvin,* 565 F. App'x 540, 544-545 (7th Cir. 2014) ("The hypothetical must account for both the complexity of the tasks and the claimant's ability to stick with a task over a sustained period.").

Neither the ALJ's RFC assessment nor any of the hypothetical questions posed to the vocational expert at the hearing incorporated limitations adequate to address Plaintiff's difficulties with maintaining attention and concentration, and with completing normal workdays and workweeks without interruptions. This leaves the Court unable to discern if the VE overestimated the jobs that Plaintiff could perform. Therefore, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion" that Plaintiff can work. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

The Court is also concerned with another component of the VE's testimony. The VE testified that Plaintiff would be able to perform work as a microfilm document preparer, an ampoule sealer, and a "paramutual ticket checker" [sic]. The Seventh Circuit Court of Appeals has questioned the appropriateness of relying on "job descriptions used by the Social Security Administration come from a 23-year-old edition of the *Dictionary of Occupational Titles*, which is no longer published, and mainly moreover from information from 1977 – 37 years ago," noting that "[n]o doubt many of the jobs have changed and some have disappeared." *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). That concern is particular relevant in this case, where one of the jobs described by the VE, that of document preparer, microfilming, is described as follows:

> Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify [microfilm camera operator] of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

DOT 249.587-018. The job of preparing documents for microfilm preservation is one that seems particularly likely to have changed in the last 37 years given the shift to digital storage and advances in scanning technology.

The *Browning* court expressed also expressed concern, which may be relevant in this case, that "[t]here is no official source of number of jobs for each job classification in the Dictionary of Occupational Titles . . . [a]nd many of the[ VEs] estimate the number of jobs of a type the applicant for benefits can perform by the unacceptably crude method of dividing the number of jobs in some large category (which may be the only available data) by the number of job classifications in the category." *Browning,* 766 F.3d at 708. The ALJ found Plaintiff capable of working as a parimutuel-ticket checker, a job with the following responsibilities: "Counts and records number of parimutuel tickets cashed at race track to verify records of cashiers. Compares totals with entries on daily balance sheet. Compares each ticket with sample or examines tickets under fluorescent light to verify validity of tickets. Reports discrepancies." DOT 219.587-010. The State of Indiana has just two horse racing tracks that feature parimutuel betting, yet the ALJ accepted uncritically both the

VE's testimony that the parimutuel-ticket checker jobs still exist and the VE's testimony that they employ 800 full-time workers in the state. *See Indiana Horse Racing Commission,* http://www.in.gov/hrc/ (listing the two race tracks in the state). The Court suspects that the number may have been arrived at by the "unacceptably crude" method described by the *Browning* court.

In short, the ALJ has failed to trace the path of his reasoning from his conclusion that Plaintiff had numerous severe impairments to his RFC assessment, then failed to support his conclusion that a person with Plaintiff's impairments could work at jobs existing in reasonable numbers in the economy. On remand, the ALJ is directed to fully weigh the medical evidence and explain how Plaintiff's medically-determinable impairments, including her difficulties with concentration, persistence, and pace and any limitations arising from her migraine headaches and seizures, in combination with her other impairments, affect Plaintiff's ability to work. In addition, the Court recommends that the ALJ specifically ascertain the source of the VE's opinion that the jobs identified as those Plaintiff could perform do, in fact, presently exist in the regional economy in reasonable numbers.

**IV.     Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 9th day of March, 2018.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record